JOHN S. McLEAN, EXECUTOR, ETC., OF JOHN McLEAN, DECEASED, RESPONDENT, *v.* ALPHEUS FREEMAN, EXECUTOR, ETC., AND WILLIAM T. McLEAN AND OTHERS, APPELLANTS.

*Will — Remainder — limited upon death of life beneficiary — when it takes effect, though life beneficiary die before testator — Lapse.*

A testator by his will, after making certain legacies, devised one-fourth part of his estate to his son John S., one-fourth part to his daughter Mary, one-fourth part to trustees for his son William T., and one-fourth part in trust for his son Alexander, the trustees being required to pay over to the two sons the rents,

issues and profits of their respective shares, and being authorized to advance any portion or the whole of said shares to either of them. The will then provided that in case of the death of either of his two sons, William or Alexander, "while the whole or any part of the said shares so held in trust for them respectively shall continue to be so held in trust," leaving lawful issue, the share of the one so dying, should go to such issue, and in case there were no issue, to his daughter Mary.

The son Alexander died before the testator. In an action to obtain a construction of the will, *held*, that it was the intention of the testator to dispose of his whole estate and to die intestate as to no portion thereof, and that the gift to his daughter Mary was not defeated by the death of the son during his lifetime.

*Semble*, that in any event there would be no lapse, as the gift being direct to the executors, the estate vested in them for the purpose of carrying out the intention of the testator, by delivering the same to the living object of his bounty.

APPEAL from a judgment entered upon the trial of this action by the court without a jury.

The action was brought to obtain a judicial construction of the last will and testament of John McLean, deceased.

*Thomas L. Hubbard* and *E. N. Sheppard*, for the appellants.

*James Emott* and *J. Langdon Ward*, for the respondent.

DAVIS, P. J.:

This action is brought to obtain a construction of the will of John McLean, deceased. The testator made his will on the 10th day of April, 1861. At that time he had four children living, to wit: John S., William T., and Alexander W., his sons, and Mary J. Halsted, his daughter. After making several provisions unimportant to the question here presented, he gave and devised to his son John S. McLean one-fourth part of all his remaining real and personal estate, and to his daughter, Mary J. Halsted, one other fourth part. He then gave to his executors one-fourth part of his estate, in trust for his son William T. McLean, and the remaining fourth part in trust for his son Alexander W. McLean. These trusts were several, and each authorized the trustees to receive the rents, interest and income and apply the same to the use of the sons, respectively. The testator then declared that he placed the

two last mentioned shares of his estate in trust for the benefit of his sons, respectively, "from an anxiety lest from their youth and inexperience they might waste the same if the said shares were given to them or placed at their disposal absolutely." He therefore directed that if the trustees should, at any time in the lifetime of either of his sons, be satisfied that he would make a prudent and proper use of the estate so held in trust for him, they should be authorized and empowered to convey or assign the whole or any part of the estate so held in trust to such son, in their discretion; and to repeat such conveyance or assignment as often as they might think proper until the whole should be so conveyed and assigned. The will then contains the following provision:

"Tenth. In case of the said death of either of my said sons William or Alexander, while the whole or any part of the said shares so held in trust for them, respectively, shall continue to be so held in trust, and leaving lawful issue him surviving, then, and in such case, I give, devise and bequeath to such lawful issue the said share, or such part thereof as may be then held in trust for the parent of such issue immediately upon his death. And in case of the death of either of my said sons William and Alexander, as above mentioned, without leaving lawful issue him surviving, then, and in such case, I give, devise and bequeath the said share, or such part thereof as may be held in trust for the one so dying, at the time of his decease, immediately thereafter, to his then surviving brothers and sisters; and the issue of any of them who may have previously died leaving issue; such issue, in all cases, to take the share or part their parent would have taken if he or she had been then surviving."

The testator afterwards executed a codicil to his will, which, so far as it is material to the questions now presented, reads as follows:

"Third. I hereby revoke so much of the tenth section of my said will as gives, devises and bequeaths the share of either of my sons William and Alexander, in case of his death without leaving lawful issue, to all his surviving brothers and sisters, and in lieu, and instead thereof, I hereby give, devise and bequeath the share of each of my said sons so dying without leaving lawful issue, or so much thereof as shall be held in trust for him at the time of his decease, to my daughter, Mary J. Halsted, alone, and to her heirs

and assigns forever, to her sole and separate use; and in case of the death of the said Mary before the death of either of my said sons William and Alexander (who shall so die without lawful issue), then, and in that case, I give, devise and bequeath to the lawful issue of the said Mary, who shall be then living, the said share so held in trust for my said son, who shall so die without issue, or all such parts of said share as may be held in trust for him at the time of his death. I hereby ratify and confirm my said will in all respects, except so far as the same is revoked or altered by this codicil."

Alexander W. McLean, one of the sons, died June 10, 1871, unmarried, and without issue. The testator survived him until January 24, 1873, when he died, leaving him surviving his widow, his daughter, Mary J. Halsted, and his two sons, John S. and William T. McLean. The will has been duly admitted to probate, and the plaintiff, John S. McLean, has alone qualified as executor. Pending this action the widow of the testator died, and Alpheus Freeman, his executor, was substituted.

The question in the case is, whether the testator died intestate as to the one-fourth part of his estate given and devised in trust for his son Alexander. It is very plain from the whole will, that the testator intended thereby to dispose of the whole of his property, and to die intestate as to no part of it. He meant to divide his property equally among his four children; but, in respect to the shares of his sons, William and Alexander, he intended, for the reasons which he assigns in the will, to place them where they would certainly enjoy during their respective lives, the entire income thereof, with power to the executors to make over to either of them the body of the trust, whenever, in their judgment, the reasons which led him to create it should cease to exist. But, as the estate of either of his sons might remain in trust during the whole of his life, it was essential in order to carry out his intention of fully disposing of all of his estate, to make a disposition of the remainder after the life estate of either of the sons should cease. He therefore provided that in case of the death of either of his sons, while the whole or any part of the share held in trust for him should continue to be so held in trust, leaving lawful issue him surviving, such property should, immediately upon his death, go to such

issue. And in case of the death of either of his sons without leaving lawful issue him surviving, then that the share, or such part thereof as might be held in trust for the one so dying, at the time of his decease, should immediately thereafter go to his surviving brothers and sisters, and the issue of any of them who might have previously died leaving issue. The testator subsequently, by the codicil above mentioned, revoked so much of the tenth section of his will as bequeathed the share of either of his said sons, in case of his death without leaving lawful issue, to all his surviving brothers and sisters, and instead thereof, gave, devised and bequeathed the share of each of his said sons so dying without leaving lawful issue, or so much thereof as should be held in trust for him at the time of his decease, to his daughter, Mary J. Halsted, alone, and to her heirs and assigns forever, to her sole and separate use.

The principal question in the case is, whether the testator, by using certain language in the creation of the trust, designed to guard against the inexperience and improvidence of his son Alexander, has defeated his manifest intention of disposing fully of the share intended for that son. For it is well settled that if the estate had been given to Alexander for life, and then to his issue, or, in default thereof, to Mrs. Halsted absolutely, it would not have lapsed by the death of Alexander in the lifetime of the testator, but would have vested immediately in Mrs. Halsted upon the death of the testator. It would, in that case, be an executory gift to Mrs. Halsted, limited to take effect upon the death of Alexander without issue; and it would be of no consequence that, prior to the decease of the testator Alexander had died, because the secondary object of his bounty would take directly and immediately upon the death of the testator by operation of the will. (*Downing* v. *Marshall*, 23 N. Y., 366; *Norris* v. *Beyea*, 13 id., 273; *Mowatt* v. *Carow*, 7 Paige, 330; opinion of McCoon, V. C., id., 331, and cases cited.) The interposition of a trust for the benefit of Alexander seems to us to make no difference in the principle. The death of Alexander has rendered the trust wholly unnecessary; and as he died without issue, Mrs. Halsted takes the estate directly by the gift of the testator, and not through the executors as trustees.

It is the share of Alexander that is given to her, under the facts of the case, and not a portion of the share diminished by the partial execution of the trust. She takes the whole because the intention of the testator was to give her the whole in case the share had not been diminished by the operation of the trust in favor of Alexander. But it is argued that, in order to make the gift to Mrs. Halsted operative, under the language of the will, the death of Alexander must have occurred while the whole or some part of his share was held in trust for him by the executors. Or, in other words, that nothing was given over to the issue of Alexander, or in default thereof, to Mrs. Halsted or her issue, unless the trust first came into operation before the death of Alexander and he should subsequently die. This argument depends altogether upon the force to be given to the words in the tenth clause — " while the whole or any part of said shares so held in trust for them respectively shall continue to be so held in trust." The will is now to be read as though the third clause of the codicil had been originally contained in the will itself. It would then have read, so far as it affects Mrs. Halsted, in these words :

Tenth. In case of the death of either of my said sons while the whole or any part of the said shares so held in trust for them, respectively, shall continue to be so held in trust, and leaving lawful issue him surviving, then, and in such case, I give, devise and bequeath to such lawful issue the said share, or so much thereof as may then be held in trust for the parent of such issue, immediately upon his death. And in case of the death of either of my said sons, as above mentioned, without leaving lawful issue him surviving, I hereby give, devise and bequeath the share of each of my said sons so dying without leaving lawful issue, or so much thereof as shall be held in trust for him at the time of his decease, to my daughter, Mary J. Halsted, and to her heirs and assigns forever, to her sole and separate use.

The subject of disposition in this provision is the share of Alexander. The testator, doubtless, contemplated that Alexander would survive him, and that his share would go into the trust; and he used language which is expressive of that contemplation, but which is also entirely consistent with his manifest intention to dispose of the whole of the share that should remain after the death

of Alexander. In one event he meant to give it to his issue, in the other (in default of issue), he meant to give it to his daughter Mrs. Halsted. The language of the provision was not used for the purpose of specifying a period within which Alexander must die in order to make the gift over to his issue, or to Mrs. Halsted, operative, but it was evidently used with regard to the power that had been conferred upon the trustees to dispose, by conveyance or assignment to Alexander, of the whole or any part of his share, and to limit the *quantum* to be taken, if Alexander should die while the trust remained not wholly executed, to the amount of the share that should then remain undisposed of. If this be not the true construction, then had Alexander left any children at the time of his death before his father, they would have taken nothing under the will. This, we think, could not have been the intention of the testator. He did not intend to disinherit the children of Alexander in any event, but, on the contrary, he intended to provide for them if the share of Alexander was not otherwise exhausted at his death, by giving it absolutely to such children ; and the same reasoning applies to the gift to Mrs. Halsted. If the idea had presented itself to the testator's mind that nothing was to be given to the issue of either of his sons, or in default of such issue to Mrs. Halsted, unless the estate should first go into the trust he created for the benefit of his sons, it would, we think, have been repelled by him as contrary to his intended disposition of his property ; and the whole difficulty in construing his will in accordance with what seems to us to have been his intention, has grown out of his desire not to interfere with the power with which he clothed his executors to make over the whole or any part of their shares, absolutely to either of his sons during their lifetime ; and to consummate his wish that what should be given to the issue of his sons, or to his daughter, should only be the balance of the fund undisposed of by the trust, in case the trust became operative.

If this construction of the will do not prevail, it would seem to be the duty of the court to hold that the share given to Alexander vested in the executors, as trustees, notwithstanding the death of the first beneficiary ; and that they would take, there being no lapse in consequence of the gift being directly to them, and not to

a deceased person, for the purpose of carrying out the intentions of the testator, by delivering the share to the living object of his bounty. Manifestly, it would have been their duty, had Alexander survived his father and then died, to deliver over the share, in complete execution of their trust to Mrs. Halsted, in accordance with the provisions of the will. For a trust of this character ought not to fail for the want of a first beneficiary, where it is plain that a second one was intended by the testator to take the whole of the trust estate, or such part of its *corpus* as should remain undisposed of, and where the trustees would not have fully discharged their duties, had the first beneficiary survived the testator, without carrying out such intention. We think, however, the decision of the case should stand upon the construction we have given to the will and codicil.

The judgment should be affirmed, but, under the peculiar circumstances of the case, the costs of the appeal of all parties should be paid out of the fund.

DANIELS and BRADY, JJ., concurred.

Judgment affirmed, costs of appeal of all parties to be paid out of the fund.